Good morning, Your Honors. I please the Court, Eric Trout, on behalf of Michael and Ora Scantlin. And I think the framework by which I am going to address the Court today will be based upon the Court's order of several days ago, where the Court asked that the parties be prepared to address the effect of Claussen v. M. V. New Carissa and Hickerson v. Pride Mobility Products Corporation. And that relates to the admissibility, in this case of Dr. Armstrong's opinion, based upon differential diagnosis methodology. So I'm going to focus my time on that, and I would like to reserve three minutes for rebuttal. I've read the cases, as the Court I'm sure has, and found that the Ninth Circuit found that differential diagnosis passes muster under D'Albert. And so what I'd like to do is talk about how the findings in Claussen and in Hickerson make a difference in this case. Could you start by just briefly explaining whether we can even reach this issue? It wasn't raised, based on my review, in the District Court. It wasn't raised to us in your brief. So could we decide the case on that basis? Well, I believe that you can. It's valid and appropriate law. And the facts of this case, it is an interesting situation, because it's not contained in either one of these cases in the brief. Well, would you be saying the District Court abused its discretion in excluding that evidence from Dr. Armstrong? And under Hickson, we have a very deferential standard to the District Court. So we would have to say it abused its discretion by excluding it based on an argument that was not raised to the District Court. So I'm having a little problem with that, and I hope you can help me with it. I'll try. Let me start out by just talking a little bit about Robert Armstrong. And I going to spend a lot of time on this. Well, let's assume, because I really do want you to address Judge Akuta's question. Let's assume Dr. Armstrong is superbly qualified, and that his opinion measured against Claussen, if anybody had ever raised this to the District Judge's attention, would have been admissible as a differential diagnosis. That he'd said, I've looked at this, there's only two possible causes, and I've ruled out one, and therefore it must be the other. How do we find that the District Judge abused his discretion, or her discretion, I forget who that is, her discretion in this case, by not ruling in your favor on that basis when that argument was never made to the judge? Well, what I would say to that, Your Honor, is that in this case, the California Substantive Law, as it relates to product liability, allows a jury, like it did in Hickerson, allows the jury to make inferences based upon the circumstantial evidence in a product liability case. So separate and apart from Claussen and Hickerson, the District Court in our case had that ability in knowing what the jury instructions were that we had in this case, that we only had two potential options here for causing Mr. Scantlin's injury, according to both experts. These other cases, Claussen and Hickerson, were multiple causes pursuant to both experts' opinions. So the Substantive Law that was already in place that the District Court had was that the jury can make inferences based upon the circumstantial evidence in this case. And the problem that we faced that was horrible was that from the start, before Dr. Armstrong was even allowed to testify, we were cut off at the knees with regard to his testimony about his conclusion based upon a differential diagnosis, a whole bunch of steps that he took, that said that this barrier being so close to this bus bar was a cause. We couldn't do that. We couldn't provide that through his testimony. Well, we know what happened, but the question is, you know, was the District Court really given the best arguments? Because you spent a lot of time saying, well, the District Court, you know, there were only supposed to be three unlimited motions, and this, that, and the other. I mean, the District Court's the gatekeeper. And let's just say that Dr. Armstrong had turned out to be a fraud, then of course the District Court can say this person can't testify. Anyone that's done jury work knows that at any given point, the District Court is making decisions every day as to what comes in and what comes out. So that, in my view, is just a ridiculous argument. But the theory, so this theory really wasn't presented, so. Well the theory was, wasn't presented because the Court wouldn't allow it to be presented through Dr. Armstrong. We got this motion served on us late, and I won't get into that because we discussed that in the brief, but we were in a position where we were prevented, in fact, and this is in the Court's record from Dr. Armstrong's testimony, the last question that my brother asked him on the stand, which would not have been the last question had the Court allowed us to go where we needed to go, was, his answer was, based on all the physical evidence and Mr. Scantlin's description of what he was doing, I don't see how that the hook hit the bus bar. Now he wasn't allowed to go that extra step to give the jury the ability to infer that leaning up against that partition, pressing against the bus bar, was the other, was that second cause. Well it wasn't, I mean the District Court was concerned by the lack of evidence that the metal could have flexed into the bus bar, if I'm explaining this right. That's right. And so the District Court's questioning was aimed at what's the basis for saying that it could have hit the bus bar and nobody was able to provide the District Court with any substantive ground for that. And Dr. Armstrong said, well I just assumed it could flex. And Dr. Kumar said, I didn't look at that. So at that point the argument would have been, well it doesn't matter because there were only two, Dr. Armstrong found, based on all the evidence, there were only two possible ways this could have happened at all, and so when you rule out one, then you have some support for the other. But that argument was not made, and so the District Court was left with the question and the absence of evidence on the flexing. Well I can address that. There actually was evidence of the flexing. Well the OSHA report. Yes, not only the OSHA report, but a GE employee who said that this 16 gauge metal was a problem. And that testimony was briefly allowed, but then when we got to Dr. Armstrong, he couldn't go that extra step. And the problem became now the jury is not going to know. We understand we didn't get to the jury. Let me try this differently. All right. Because I know the posture in which this came up. Put aside when it was filed and how late it was and what notice you had. GE came in and said, Judge, we want you to exclude Dr. Armstrong, not because he's not an expert, not because he hasn't done appropriate studies. We don't think he can opine that the partition flexing or contacting with the bus bar was the cause of the accident. We don't have any objection to him opining that the hook wasn't because he's done testing on that, but we don't want him to opine to that. And the judge said, yes, I don't think he's qualified to opine to that. I guess my question is, at that point, does the person proffering the evidence have to say to the judge, wait a minute, Judge, you've got this all wrong. By excluding the other, he's included this one in, or is it enough that the judge just erred in concluding that he wasn't qualified to offer that opinion? I think that's the question. Putting aside the merits of the differential diagnosis claim that we're trying to ask you to help us resolve. Yes, and I see that. I see what you're saying. And when I look at these other cases that the court has asked us to take a look at, there was a plethora of circumstantial evidence, okay, with regard to flex, that the jury could have been able to then make up. No, no, we're not worried about what the jury could have done. I'm worried about whether or not the district judge erred in excluding Dr. Armstrong's opinion that the accident must have been caused by the bus bar contacting with the barrier. There's a separate issue of whether the case should have gone to the jury or whatever. But that's the question. Did the district judge err in excluding that opinion? I happen to think the differential diagnosis argument makes a good case that the judge would have erred had anybody ever said to her, wait, Judge, he doesn't need to be able to testify about flex. He just needs to be able to testify that it must have happened that way because it couldn't have happened any other way. The absence of somebody saying that to the judge, what do we do? And it wasn't in your appellate brief either. Yeah, you look at the circumstantial evidence that is in the record that the judge had before her to determine whether that was the case. So essentially we have to fault the district court for not making, connecting the dots that you could have connected in the sense that, I mean, there was, it does appear that Dr. Armstrong, that there was evidence in there about that this particular type of metal does flex. Now, there was no recreation of, because apparently this got destroyed, right, in the accident. There was no recreation about whether it would have flexed under those circumstances. But if you had made the argument, yes, this type of metal does flex, and there was the other employee, and that Dr. Armstrong, you know, with all his training in this, looked at what the OSHA report said and all of that and said, and experts can't answer hypotheticals and say, the hypothetical would be if this type of metal was used and it was in this type of thing, if it had flexed, would, could that have caused the accident? Is that, that's what you wanted to do, but you never said, yeah, experts can rely on other statements. They don't have to exactly recreate the, and there's only two causes of this, and therefore. Well we tried, and with the Rule 26 report, it was spelled out in detail. I mean, it was clear that both experts had narrowed it down. So why did we have to go get the Rule 26 report ourselves? If it was, I mean, we had to get it ourselves. No one provided it to us. I can see why GE didn't, but why didn't you? Because I thought, from the record, it was, it was pretty clear what had happened. I didn't think that the Rule 26 report. Well, see, it seems to me your best argument, and this is why the absence of the Rule 26 report was problematic, your best argument when one reads the report is that the judge had read the report, she said so, and she was, she said, after I read it, I don't think he's qualified to offer an opinion, and your best argument on appeal is no, read that report. He has done exactly what the Clawson case says is appropriate, and yet you didn't put the report in the record. It was an exhibit to a deposition, but not attached. It was marked. I take it marked in the general pretrial marking of exhibits, but never even offered for identification. So that's problematic. I mean, if you want us to rely on a report, just as if you want us to rely on deposition testimony, you need to give it to us, and it needs to be in the record. And then make the argument that it goes to cross-examination, and why that expert opinion shouldn't be accepted as to the other, and that's left to the jury, but it's hard to do that without the, I mean, we have it now, but we had to get it. And I guess my concern is that the, so the Court made the ruling, and then our, in order to find that that was an abuse of discretion, she had the expert report that had this information. We'd have to say that her ruling was implausible, illogical, and without support in the record. So what's the best argument that, without the legal argument being made, without citing Closs and the differential diagnosis issue, just with having the report, which would certainly support that argument, that the District Court's ruling was illogical, implausible, and without support in the record? Well, because we had, she had two experts who were indicating that it was one of these two ways that this tragedy happened. And her ruling, not just the Rule 50 ruling, but the initial ruling in precluding Dr. Armstrong from testifying about that, prevented us from going there, prevented us from putting on the circumstantial evidence that the Court had, not just in the Rule 26 report, but in our argument of the motions, in the deposition testimony that she asked for and reviewed. It was all there. It was there, but as Judge Callahan was saying, you hadn't connected the dots. So is a District Court's obligation sui sponte to connect the dots, just as a matter of substantive law? Is that your argument? Well, it wasn't hard to connect the dots in this case, and particularly when you're making a ruling that is going to be dispositive of the case. It was all there. It wasn't real complicated, and we had been there for, you know, this ruling wasn't even made until two or three days into the defense's case. So I mean, the factual scenario and everything that was needed there by way of Dr. Armstrong's opinions were there. And I think I'm going to reserve my time unless the Court has any other questions. Okay. Thank you.  Good morning. May it please the Court. James Hanlon for Appley General Electric Company. Good morning. Your Honors, if the plaintiffs had raised the Clauston v. New Carissa case with the District Court, it wouldn't have made one witt of difference, and here's why. Well, yeah. I guess the whole thing is, you know, I'm sort of looking at that and saying, why doesn't this just come in, and it's a subject of impeachment? And you know, I mean, Dr. Armstrong isn't deficient in his qualifications. There is evidence, when you look at this exhibit that we pulled at, there is evidence that that type of metal does flex, and so, and experts can, they don't have to do every experiment themselves. They can rely on other reports. And if you look at Dr. Armstrong's report, he relies on a lot of other reports and makes all those. So why can't he answer that hypothetical, and then you impeach him, saying, well, you didn't do any experiments on the actual piece. You could have done that, right, but you didn't, and this, that, and all of the other. And if it really couldn't happen that way, you could have a call, or maybe you couldn't call an expert that could impeach on that, and I understand his, I think it's ridiculous that he says that the District Court can't at any time keep something out. I think that gatekeeping continues, but by the same token, you're raising it when they don't have time to go get anyone else, and lying in wait on that, I can see where that, he's feeling a little bit like he was had. Well, there are multiple questions in that. But it's just like, I'm just looking at it. Why doesn't it just come in, and then you impeach the heck out of this? That's what cross-examination is for. That's why you have other experts. That's why you, and then let the jury decide, did it happen by the hook, did it happen by the wall flexing? Let me answer that question first. The reason is because in Daubert and Kumho, the Supreme Court has said quite clearly that where an engineering or technical expert doesn't follow the scientific method, that testimony has to be excluded. Well, and that's my problem with the District Court's ruling, and that's my problem with your argument. And if you read the notes to 702, I think they're pretty clear that they're not meant to be hyper-technical. So, in this case, we have, and stop me where I'm wrong, we have a highly qualified electrical engineer in Dr. Armstrong. Correct. We have a case in which, after looking at all the evidence, he goes to the scene, he looks at the reports, he looks at testimony, he says, in my opinion, there's only two ways this could have happened. And there's where I jump off the train wreck. Well, tell me where, I've got his report here. And he says, in my opinion, there are two possible causes. That's correct. Two possible causes for this accident. And nobody asserts that there's another possible cause for it. Well, the reason for that, Your Honor, is that our expert, Dr. Newhaven, didn't do a differential diagnosis. We think of this as the case of the smoking chain. The metal logging chain was literally welded in place three and a half inches from the bus part that caused the explosion. So, Dr. Newhaven goes in and says, boy, we have a conductive tool three and a half inches away. I'm going to look at that first and see whether I can include that as a cause. He doesn't do a differential diagnosis. He doesn't say where all the potential is. No, I understand your expert doesn't do that. But this is a case in which Dr. Armstrong's report, I think fairly read, not hyper-technically says, I'm an expert. I've done what experts do. And in my mind, there's two ways this could have happened. One is something could have contacted with the bus bar by going over the barrier. And the other way is the barrier could have touched the bus bar. And I've done it for a whole bunch of reasons, he says. It couldn't have happened by putting something over it. Mr. Scanlon wasn't burned. There was, you know, et cetera, et cetera. I have no idea whether those are good reasons or bad reasons. But they sound like the kind of things experts pine on. And he's allowed to say that. You don't claim that there's anything wrong with that. Given that, and given that his only other explanation is that some contact was made, put aside whether he can opine about the flexibility of the barrier. Surely he ought to be able to opine that it occurred when contact was made between the barrier and the bus bar, shouldn't he? He should not. And here's why, Your Honor. And it's stated right in Claussen against New Carissa. The Ninth Circuit there, Judge Scanlon writing for the panel, says the first step in doing a differential diagnosis is you have to brainstorm all of the potential causes, right? And I'm quoting, I'm reading directly from the opinion now. The issue, and this is on page 1057 to 1058, the issue at this point in the process is which of the competing causes are generally capable of causing the patient's symptoms or mortality. Here's the important sentence. Expert testimony that rules in a potential cause that is not so capable is unreliable. The problem here is that Dr. Armstrong assumed that the barrier wall was a potential cause. No, no. Let me, no. I think that's wrong. I think what Dr. Armstrong said was there's only two ways. Everybody agrees in this case, not contested, that something made contact with the bus bar, correct? That's correct. Okay. And he said there's only two. On the facts of this case, after looking at all the evidence, looking at all the testimony, there's only two ways the bus bar could have made contact with something that would have hurt Mr. Scanlon. One is when he threw the hookover pulley. The other one is somehow the barrier contacted with the bus bar. Those are the, and so far, and I looked at the pretrial orders and I've looked at the parties, the parties rather clearly agreed those were the possible causes of the accident. Your theory was it was because of the hook. We never agreed. GE never agreed that the barrier wall was a possible cause. I understand. GE's position was the only possible cause was throwing over the hook. But there wasn't a third possible cause that was raised. Is that correct? Not that the experts ever identified. Right. So you think Dr. Armstrong is wrong in thinking that this is the possible cause because the only possible cause, in GE's view, was something being thrown over the top and contacting with the bus bar. Well, not the only possible cause, but Dr. Newhaven, our expert, and of course his testimony is not part of this record because this was a Rule 50 motion. What he did is he said, look, I have a foreign object very proximate to the source of the explosion. I'm going to start there and see if I can rule it in. His opinion was that, yes, the forensic evidence definitively rules this in as the source of the explosion. And Dr. Armstrong's position was it definitively rules it out. And so then Dr. Armstrong says, My only other explanation, based on my expertise, is that the barrier and the bus bar make contact. Maybe he can't say it's flexible, but why can't he say they make contact? Because he has to follow the scientific method to rule that in as a possible cause. And everyone agreed that it's possible, knowing the physical attributes of this barrier wall. It's 16-gauge steel. We know its dimensions. We know exactly how far the bus bars are away. And we know that it's possible to either do a recreation in an exemplar and see how much force you have to exert and whether you can contact. Now, why doesn't that just go to the weight of cross-examination? Why isn't that what you're ready to nail him on, to erode on his opinion? But by knocking him out, it says he's not qualified to give that opinion. That's why your opinion, that's what trials are about, why your opinion, your expert's right and the other one is wrong. But it's not that he's not qualified to do it. The problem is that he didn't follow the scientific method to rule in the barrier wall as a potential cause. He simply assumed it. He didn't conduct any testing. He didn't do any analysis. He didn't do any math. He just simply assumed that this barrier wall could be deflected with some sort of force. So how long did you have that report? We got the report on January 10th of 2012. And when was the trial? In April. And so were you planning to cross-examine him on that? Of course, if our motion had been denied and he had been allowed to testify. But you made the motion after the trial had already started, right? We made the motion the Friday before the trial started and Tuesday, Your Honor. All right. And before so they couldn't go get another expert, right? They couldn't have gotten a new expert anyways, Your Honor, because expert discovery had closed when the Rule 26 reports were issued. So if we're giving your opponent a hard time about not making a precise argument below, but I suppose if you'd made this argument a deliberate motion before trial and he then failed to raise it, I could be more critical of him. If he gets this deliberate motion on the Friday the trial starts, should we really hold him in his response to being precise about raising the differential diagnosis theory or is it enough that he said, look at his report. He's ruled in one and ruled out the other. Isn't that enough? Well, the deliberate hearing was conducted six days after we filed our opening paper raising the issues behind the objection. I certainly think, Judge Callahan, I know you've been a trial judge. Going into trial, you always think about the admissibility of your evidence, particularly expert testimony. Have we got our basis correct? Well, it just seems to me if this is really true, that, I mean, you have to have expert testimony to show causation, and that this report is deficient in that way, that that would be a basis for you to get summary judgment back then. Sure. I mean, you got lucky. There's no two ways here. But the question is, you know, it's the district judge didn't have all the benefit of the time to look at it that we have here, and there is a very deferential standard and to fault a district court for not doing something when the district court isn't given the full panoply. But by the same token, I still am struggling with why isn't it just cross-examination, which I think you were prepared to do. Yeah, let me get to that, Your Honor, because I really think that is the crux of this appeal, and I do think that the district judge made the right ruling in excluding, and here's exactly why, you know. I'll turn the court back to the Ninth Circuit decision in Clawson against New Carissa. Now, that's an oyster die-off case after a petroleum spill, right? And you have the plaintiff's expert whose opinion is that the oysters were poisoned by dilute petroleum in the water in Coos Bay. And the defense makes an argument. They bring a motion to exclude that testimony, and they say this is, it didn't follow the scientific method because there are no studies out there that measure specifically the amount of petroleum or the concentration of petroleum that's necessary to kill an oyster. And the district judge says no, the expert followed the scientific method, and here's why. He knows generally that from studies in every other species that oil at certain levels is toxic to animal tissue. He knows that these oysters were exposed to the petroleum. He knows that petroleum was found in the oyster tissue. He knows that there are lesions found in these oysters consistent with oil toxicity. And the fact that he can't point to a particular peer-reviewed study that says, here's the concentration of petroleum that you need to kill an oyster, doesn't mean that his testimony is non-scientific. Now, here is why that case is different from this case, okay? That case, everyone knew it was a given fact that the petroleum had reached the oysters. It was found in them. There were lesions consistent with petroleum toxicity. No one in this case knows, and no one on the plaintiff's side could say, that that barrier wall could be pushed far enough to touch the bus bar. But everyone knows on both sides that this occurred, this accident occurred, because some metal made a contact with the bus bar. That is an assumption that I think both experts made. Well, it's the assumption in which the case was tried. I mean, the pretrial, nobody said, by the way, there might be some other. I don't know what Dr. Newhaven, if he could have hypothesized another cause. But he didn't. Well, the reason is because, from his perspective, it was very clear that it was the hook. Well, but when I read this report, again, it says, I've done all this work, and in my view, there's only two possible causes. And you really don't contend that there's another possible cause. You contend that it's one of the possible. Judge Hurwitz, I'll ask you, go back and look at the Rule 26 report, and I think it's quite remarkable when you look at it. It's about 30 pages long. Out of those 30 pages, 29 1⁄2, at least, are about excluding the hook and the chain. All of the testing that they did to exclude it. There is not a single bit of work done to exclude the barrier wall. I take your point. I take your point that he's done no testing whatsoever on the interior wall. But he does say, look, I've looked at this whole apparatus, and I've looked at this accident. The only ways that this could have occurred are the ways G.E. hypothesizes, which is the pulley touched, or that somehow the bus bar made contact with the wall when Mr. Scantlin, who did testify, said, I was leaning against it. When I was leaning against it, that's when the accident occurred. He said, those are the only two possible ways, as an electrical engineering way, this could have happened, and the way G.E. says it happened couldn't have happened, he says. Under those circumstances, does he have to then test to see whether that's your position? Absolutely, Your Honor. It's not my position. It's this Court's position. It's exactly what the Court said in Claussen v. Nucarissa. When you are coming up with your list of possible causes, when you're looking at general causation, you have to actually determine, using the scientific method, that every possible cause you're going to include on that list could actually have caused the illness or the accident. What about Hickerson? Because in Hickerson, the District Court wouldn't allow the expert to testify that the wheelchair, or whatever it was, caused the fire, but would allow him to testify about circumstantial evidence pointing to the chair. Right. The difference between Hickerson in this case is, in Hickerson, it was a fact that the scooter was plugged in and being recharged, and it was not disputed by either side that electrical shorts can occur inside a scooter that's being charged. It was a possible source of origin. And so did you contest that the wall was flexible enough that it could have reached? I mean, did you try to rule out the flex wall? Well, we certainly never conceded that the wall was flexible enough to reach the bus driver, Your Honor. It's not our burden to disprove Dr. Armstrong's hypothesis. Well, that would have happened if it had moved on to your presenting your case. Right, Your Honor. It's Dr. Armstrong's burden, and it's the plaintiff's burden, as the party offering his expert testimony to show that he followed the scientific method to include this potential cause. And he literally did nothing. That's where you're losing me, and I guess maybe we just have a disagreement on this, but your position is that having excluded, in his mind, all other scientifically possible causes, he couldn't include another one without having done an independent test to include it, even though the whole apparatus had blown up. He had to show general causation. For him to make the assumption that it was the specific cause here, because he had excluded all other potential causes, he has to show that it's a general cause. He has to show general causation. This is discussed in the District of Oregon case that's cited in Claussen. It's the Hall v. Baxter Health Care Corporation. Let me be, and I know you're running short of time, but let me be more specific here. I understand why the district court could say to Dr. Armstrong, I won't let you testify about flexibility of the barrier. You're not an expert on that stuff. But where I'm having a hard time is saying, but I will let you testify that the accident, in your opinion, must have occurred when the barrier made contact with the bus bars, because you are an expert on electrical conductivity, and since you've ruled out the only other possible cause, why can't she, why wasn't he qualified to say that? Because he couldn't, because he had not followed the scientific method to rule that in as a potential cause. It is as though she would allow him to say a small way. Well, he used a scientific method, but what you're requiring is he has to actually recreate the experiment. Not necessarily, Your Honor. He could have done some mathematical calculations. He knew the distance. He knew the expanse of the steel. He knew the thickness of the steel. Are you saying it wasn't a reasonable assumption on his part? Exactly right. Exactly right, Judge Akuta. And if it were a reasonable assumption, then the differential diagnosis would have been enough, but here it wasn't reasonable? I mean, if the plaintiffs wanted to try to do this, they could have brought in Judge Armstrong and put him on the stand with the district court judge, and he could have tried to explain to her why, based on his experience and training, he didn't need to do any testing or he didn't need to do that. Well, no, actually, they asked if they could put Dr. Armstrong on the stand at the hearing, and the judge said, no, I can do this under report. They never once asked, Your Honor, to go back and look at the record. They never asked that question. I have. Didn't they say, we came in here today expecting to be able to put Dr. Armstrong on at this and voir dire him, and the judge said, I don't need that. I've read his deposition and report. What the judge said at the beginning was, I've read his deposition and report. Based on what he has said, I'm not sure there's anything further I need to hear from him. The plaintiffs never objected. They never said, well, actually, Your Honor, we want to put him on. And then she said, now, Dr. Armstrong, please wait just outside. When a judge tells you, when I tell you, I don't need to hear any more, and then you keep arguing, and I go, Counsel, what more do I need to say that more slowly? I don't need to hear any more. I understand, Your Honor. I mean, we're parsing here. Perhaps. I mean, I was there at the hearing. I think the record reflects that if the plaintiffs felt that Dr. Armstrong had anything to say to elucidate his deposition testimony in a way that might have changed the outcome, they certainly had that opportunity. They just never asked. All right. Are there any additional questions? Thank you, Counsel. Touching on that last point, my brother did indicate during the hearing, and I was there, that we thought we were going to be able to put Dr. Armstrong up to be able to talk to the court and let you know why he can provide a reasonable assumption. And the reason why this was a reasonable assumption. So was your mom there, too, or what? No. Okay. My sister's a court reporter, but she wasn't in the courtroom then. The reason why this was a reasonable assumption was, and getting to the point about the flex and why Dr. Armstrong had the ability to talk about that, is that one of the things that he did was go to the scene with the defense expert, sit in the same position, because the switch gear is a big, as you probably learned from what you read, it's a big item. It's a big thing. And so he was able to sit on the same area that Mr. Scantlin was, although the area was blown out from the explosion of the metal. But he was able to conduct some testing. And when counsel says that the case, Clausen says you have to have general causation, that Dr. Armstrong needs to provide general causation, he was able to do that based upon the testing that you read about in the report, but actually being in the switch gear, sitting there, taking measurements. The metal wasn't there. So if it were immovable iron bars, then his theory that the immovable iron bars flexed into the bus bar would not probably be a reasonable assumption. But we don't know anything about this metal thing from Dr. Armstrong's report or testimony. Well, we do a little bit. I mean, there was a hole, but there was still parts of the metal there. So they were able to establish, and through Dr. Kumar, the metallurgist, the width, the size, the 16 millimeter. And we were able to know by him going to another site with other switch gear and his ability to flex it, what it was like. And we know from their own GE employee that this was able to flex. But he wouldn't opine on that. He said, I just assume it. Yes, and he didn't really need to. There was enough there based upon his analysis that we only have two possible ways that this occurred. Or one possible way according to GE. Yes, one possible according to GE. Klausenkart, just to point out one point that I think is important, where peer review and publications are absent, the experts must explain precisely how they went about reaching their conclusions. And that's what Dr. Armstrong did in this case. And we weren't able to get it further on to the jury. Do you have any further questions? All right. It appears that we've got all our questions answered. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Ikuta, Hurwitz